MARVIN, Judge,
dissenting.
The primary issue in claimant’s appeal is whether the trial court erred in concluding that claimant sustained only a scheduled loss and was not disabled, either totally or partially, as a result of his 1978 accident.
This issue is factual, primarily one of credibility, and is best resolved by the trial court, whose determination we may not disturb where it is reasonable and is supported by the record. This court’s determination that claimant is partially disabled is contrary, in my opinion, to the proper allocation of functions between the trial courts and appellate courts. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Cadiere v. West-Gibson Products Co., Inc., 364 So.2d 998 (La.1978). I dissent because I believe the record strongly supports the conclusions of the trial court.
Claimant broke his ankle in 1970 and his leg sometimes before the 1978 accident complained of. He had arthritis in his ankle as a result of these earlier injuries. Before the 1978 injury, claimant sometimes limped, had difficulty, and was “careful,” with his leg when working as a bricklayer on a scaffold. Medical and lay testimony support these findings.
After the 1978 accident and resulting surgeries removed the pre-1978 plates and pins and then fused his ankle, the claimant was temporarily totally disabled. After recovery, he had less pain but perhaps more difficulty with the ankle because of the fusion, but still in the first quarter of 1981, he refereed basketball games for pay. Motion pictures show him refereeing three games in about four hours. In his initial deposition he admitted umpiring softball games and other activities, but flatly denied refereeing basketball games even though he was asked several times. After claimant learned of the motion picture, he attempted to explain in his testimony that he was “confused” during his deposition. His deposition does not indicate or suggest any such “confusion.”
His treating orthopedic surgeon, who had seen him in 1976 and who saw him 25 times between the 1978 injury and January 13, 1981, and who performed the surgeries after 1978, said that claimant reached pre-in-jury status in late 1979 and released claimant to return to work as a bricklayer in 1980. This doctor opined that claimant had a 30 percent “disability” of the leg.
A second orthopedist saw claimant six times between December 10,1980, and June 22,1981. He agreed with the treating physician’s estimate of 30 percent disability of the leg. At first he did not think claimant could return to work as a bricklayer. On May 22,1981, he said that claimant could do whatever he could tolerate. On June 22, 1981, he said that claimant was probably able to do physical labor, that his pain was mild and was not significantly disabling.
A third orthopedist saw claimant one time on August 15, 1980. He suggested that claimant should not return to work as *647 a bricklayer, estimated the disability of the leg at 35-40 percent, but agreed that the treating orthopedist could make the comparison of claimant’s pre and post-1978 injury condition better than anyone and that claimant could climb scaffolding but that it would be painful.
A rheumatologist who saw claimant four times between December 1980 and June 29, 1982, said he saw no reason why claimant could not perform construction work, lifting, stooping, and walking.
In late 1980, and 1981, and before trial in 1982, claimant worked at many jobs, even sometimes laying bricks on odd jobs, climbed ladders and into attics installing fans, and did physical work as a roustabout and welder at other times.
The trial court’s conclusion that claimant was not disabled because of pain after February 1981, either partially or totally, is amply supported by the record, is reasonable, and is not clearly wrong or manifestly erroneous. In my opinion, the trial court, weighing and determining credibility issues, correctly limited claimant to the scheduled loss. LRS 23:1221(4).
I would affirm the judgment of the trial court because it is reasonable, supported, and is not clearly wrong.